The next case is number 135088, Lalonde v. Department of Health and Human Services. Mr. Webb, when you're ready. Thank you. May it please the Court. We believe that the Special Master denied Matthew Lalonde's claim for compensation because his representative could not identify and prove the specific biologic mechanism through which Matthew's DTAD vaccination caused his injury. And this is inconsistent with the law established by the Court in Knutson v. Secretary of Health and Human Services and in Alton v. Secretary of Health and Human Services and Capazano v. Secretary of Health and Human Services. You can probably skip the second name of all these cases. In your view, what did you need to show? Did you not need to still show that there was some reputable or scientific explanation that pertained to the sequence of events in your case? We believe we need to provide a scientific explanation, but there are many ways to provide that scientific explanation and demonstrating the mechanism of injury is only one of those many ways. In many ways, this case is like Alton and Capazano. The Special Master required the petitioners to use a specific kind of evidence to present their case to prove causation. And essentially said, I will not find any other approach credible or reliable. For example, evidence of a specific mechanism of injury is persuasive evidence, but it's not always available. So what was your evidence? I mean, I know there's the temporal aspect of it, but it seems based on the transcript that your expert really gave you very little in terms of specificity. I mean, his testimony as to the cause and effect, right? I mean, what is that that you can call out in the record besides the timing of this that gives you some indication that there was a nexus? There is more than the temporal relationship, and that is the essence of what the Special Master, I think, got wrong. What Dr. Kinsporn testified was that an anaphylactic reaction, and everyone agreed that Matthew suffered an anaphylactic reaction to his DTAP vaccination, that an anaphylactic reaction, it can be a life-threatening event, and everyone agreed to that, and that an anaphylactic reaction frequently involves or typically involves hypoxia and inflammation in the brain. Not always in the brain, I want to be clear on that. And he said that because Matthew was speaking in a normal way before the vaccination and before the anaphylactic reaction, and he lost his expressive language immediately after the vaccination and anaphylactic reaction, that it seemed reasonable to him, in fact he used the word compelling to him, that that had happened, but we didn't see that there had been anoxia or inflammation,  because we know that anaphylaxis can cause this, and we know that loss of speech skills can sometimes be a symptom of injury to the brain, and that when I see this temporal relationship, and I add the temporal relationship between the anaphylactic reaction and the loss of speech skills, and I add to that the propensity of anaphylaxis to damage the brain, and the fact that loss of speech skills can be a symptom of brain damage. But the portions of the testimony of your expert that I guess are called out in the briefs and the record go to his acknowledgment that he didn't know whether there was a theory that was generally accepted or even discussed in the medical community that would link the two. He said that he had never seen an anaphylactic reaction lead to a focal brain injury and could not find support in the medical literature for that. So it seems like, except for the temporal point, the expert wasn't positing some sort of analysis or some sort of accepted principles from the scientific community that could support the link. Am I misreading it or missing something in the record here? Let me see if I can... Anaphylactic reactions usually either kill you or leave you okay. This kind of middling brain injury is an unusual result of an anaphylactic reaction. And Dr. Kinsborn conceded that. But he said that he found that when anaphylactic reactions do kill you, they kill you by depriving you of oxygen or by causing inflammation in the brain. And he said that given the fact that Matthew had normal speech development before the anaphylactic reaction and had a loss of expressive speech after the anaphylactic reaction, that he felt that that temporal relationship was compelling given the fact that anaphylactic reactions can affect the brain, can damage the brain. What did Dr. McDonald, the government's expert, say about the speech loss? What exactly did the government's expert say about the speech loss? He said that he thought the speech loss was a result of repeated ear infections. And I should point out, this is an important point that I may not have emphasized in the brief. The special master did find that there was a speech loss after the anaphylactic reaction. Which, am I remembering right, sort of resolved itself in some not-too-long period? It was resolving. It was resolving, okay. And that is one of the reasons why I've asked that, should we prevail and remand for a new hearing rather than ask it to be decided on the current record, is that the manifestations of Matthew Lalonde's brain injury now are less pure speech delay. It's certainly less pure expressive speech delay. He still has manifestations of a brain injury. And so, that was six years ago. And we're seeing the evolution of his brain injury has continued. It looks a little different now than it looked then. But better, right? Well, not really better now than then. At the time of the hearing, his condition probably looks worse now than it looked at the time of the hearing. But that's not in the record. But my point is that there was an abrupt loss of expressive speech. The government's expert said that he would not expect an anaphylactic reaction to damage the brain or cause a speech regression if there weren't immediately apparent signs of anoxic brain injury. Reduced responsiveness. Loss of motor skills. Something that everyone would have said, something like the kid hitting over the head with a baseball bat and you look and it changes. And maybe some different kind of EEGs, right? Right. And Dr. Kinsborn said certainly that would make it easier to diagnose this brain injury. But I think and I believe that a loss of speech skills is also evidence of a brain injury. Both in the special master's decision and in the court of federal claims decision, it says a couple times that Dr. Kinsborn conceded there was no evidence to support anoxia or inflammation. And he may have said something like that in the transcript. But he also said that he thought that the loss of speech skills, which occurred immediately after this anaphylactic reaction, was evidence that the brain had been damaged as a result of the anaphylaxis or the anaphylactic reaction. So, in essence, the difference is... Can I just understand something? Was his testimony that there could be... That this focal injury that is focused on the part of the brain that provides speech ability was unusual because it was so focused, but in fact through a mechanism of oxygen deprivation or inflation? Or did he say, I'm not disputing the proposition that there was no oxygen deprivation or inflammation, but nevertheless through a mechanism I don't really understand, this focused injury did occur, I think, from the anaphylactic. He did not say that I don't believe the anoxia or inflammation occurred, but nevertheless there was an injury. He was saying I don't see anything other than the loss of speech skills immediately after the anaphylactic reaction that I can point to to say there's a symptom of anoxia, there's a symptom of inflammation. There were some of the symptoms that were described by the mother, but not in the medical records, that were evidence of anoxia, like through lips and things like that. There were some of those, but that those were disputed, whether those occurred or not, were a matter of question of fact. But the question of whether or not there was in fact a loss of speech was resolved in favor of loss of expressive speech skills. The special master found there was in fact a loss of expressive speech skills. Dr. Kinsborn felt that was sufficient to suggest that there had been a brain injury, and Dr. McDonald did not. The key point is that the special master required Dr. Kinsborn to persuade him that he understood that there was evidence of this particular mechanism, anoxia or inflammation. When Dr. Kinsborn could not do that. And then he said that Dr. Kinsborn's testimony was unreliable, because he was willing to find that the anaphylactic reaction had caused the injury, when he couldn't, and he did not understand and could not explain precisely which of these mechanisms it was, or whether in fact it could have been another mechanism that he didn't understand. In other words, Dr. Kinsborn was prepared to say, you have a potentially dangerous reaction to a vaccination, and you immediately see a change in function. That implies that that potentially dangerous allergic reaction caused the change in function. And he was prepared to make that conclusion, and his testimony was premised upon that logical sequence of cause and effect, a potentially dangerous adverse reaction to the vaccines, followed by what can be a symptom of brain injury. And Dr. Kinsborn felt that building your opinion on that kind of evidence was unreliable. And so he was critical of Dr. Kinsborn's testimony. And what was important to note is that throughout his decision, he emphasizes the reason why he had problems with Dr. Kinsborn's testimony, the reason why he denied compensation was there wasn't good evidence on what the mechanism of injury was. And that ignores the other ways of proving, providing a reliable scientific basis for your testimony. In this particular case, it was the fact that the anaphylactic reactions can damage the brain, and Matthew had symptoms of a damaged brain shortly after the anaphylactic reaction. As in, for example, this program was created partly because DTP, whole cell DTP vaccine, can damage the brain. But the mechanism was not known. It was on the table, so we never got into those causation questions. But often, even though a causal relationship exists, you cannot prove how. You cannot prove the mechanism. And if you require petitioners to prove mechanisms, you frequently deny them the opportunity to prove causation, even though there is reliable scientific evidence for it. Thank you. Okay. Thank you, Mr. Webb. Thank you. Ms. Renzi. Good morning. My name is Linda Renzi. I represent the Secretary of Health and Human Services. It was petitioners' burden to show by preponderant evidence that the vaccine administered to Matthew brought about his injury by providing a medical theory causally linking the vaccine to the injury in a logical sequence of cause and effect, showing that the vaccination was the reason for Matthew's injury. Was there evidence of an alternative cause of this injury? Of the anaphylaxis? You're talking about preponderant. You say preponderant evidence. What was the evidence on the other side that something else caused this injury? The injury of anaphylaxis, both experts agreed, was caused by the administration of the DTAP vaccine. But that injury resolved. The speech loss, I think, is the question. Everybody agreed there was an anaphylactic shock, but the anaphylactic shock can be severe, it can be mild. A severe one can deprive the brain of oxygen and cause inflation, with consequent damage to the brain. Dr. McDonald said, I don't think that happened, because if that had happened we would have seen lots of other evidence, so that didn't happen. Their expert says, but that leaves out one thing, there was something, something happened to cause a speech loss. I don't think that's in dispute. The question is, if it wasn't the oxygen deprivation and inflammation, what was it? This is exactly the question I asked your office at number. What did Dr. McDonald say about the alternative cause, as Judge Newman indicated, about the immediate problem of speech loss? I don't think Dr. McDonald gave an alternative cause. He initially said that he thought part of Matthew's speech loss could be to recurrent ear infections, as Mr. Webb said. He also thought medications. Matthew was treated for seizures. Whether they were seizures or not, I think, was subsequently disputed, but when he was taken off the seizure medication, his language skills improved. So it was Dr. McDonald's belief that there were other causes for some of Matthew's deficits, but he did not believe that there could be a two-phase anaphylaxis, posited by Dr. Kinsborn, that occurred five hours after vaccination resolved, and then the theory of causation two days later evolved again, causing this focal brain damage. He thought if an anaphylaxis reaction occurred, it would have caused a more systemic brain injury through anoxia or an ischemic encephalopathy, a stroke, lack of blood flow, and none of those were evident on any of the clinical tests that Matthew underwent. His blood pressure was always normal. His oxygen saturation rates were normal. His MRIs were normal, showing that there was consistent blood flow to his brain. There was no stroke. So there was no mechanism hypothesized by Dr. Kinsborn that was at work in this case. I disagree with Mr. Webb that this case is analogous to Alpen or Capizano. This case is almost directly on point with Moberly, where you had a novel theory of causation that was never seen before, that was not accepted in the medical community, namely that anaphylaxis can cause focal brain damage. And Dr. Kinsborn had never seen it before. He had an incomplete understanding of how this could occur. So Dr. Kinsborn is the one who offered these mechanisms, the three mechanisms, inflammation, apoxia, or cytokine release. So as Dr. Kinsborn's theory of causation, this anaphylaxis went through a two-stage. The first one was clinically resolved. There was no shock. There was no signs of inflammation. There was no signs of cardiorespiratory compromise. He was released with no clinical symptoms. And then 24 hours later, or at some point later, these symptoms recurred, which were different than the anaphylaxis reaction. And it was Dr. Kinsborn's theory that all of these tied in. But the mechanisms that he used he could not find were at play in Matthew's case, which is why the special master looked at Dr. Kinsborn's testimony under both prongs one and two of all of them. And he found that Dr. Kinsborn's theory lacked merit because he could not find anything under Daubert that would make the first theory, his theory of causation, reliable, based on reliable scientific or medical evidence. There were no articles that showed not vaccine relation to the anaphylaxis, but that in general anaphylaxis can cause a focal brain damage. As I said earlier, Dr. Kinsborn... Just to be clear, it is entirely possible to have a reliable medical theory without understanding the mechanism of causation if you have enough epidemiological evidence. Maybe this was true back in the 50s or 60s about smoking and lung cancer. People didn't quite understand the mechanism, but the epidemiological evidence became quite convincing. So there's no question about having to understand the mechanism to have a reliable theory. The problem here, I take it, that the special master found is that there just wasn't any reliable evidence of any sort. Correct. First he found it wasn't reliable. Dr. Kinsborn posited this two-stage anaphylaxis reaction, one that occurred five hours after vaccination resolved, and then on April 14th and 15th he was released from the hospital on the 16th, and on the 17th had the other event involving hypothermia and the clenching of the facial grimaces that were subsequently thought to be seizures but did not show up on the EEGs subsequently. And Dr. Kinsborn did submit literature about this two-stage anaphylactic reaction. However, the literature Dr. Kinsborn relied upon had no similarity to the sequence that was involved in this case. Dr. McDonald testified that that sort of reaction he had never seen before. He understood the two-phase anaphylactic reaction, but this sequence he didn't think had a plausible connection to a two-phase anaphylactic reaction. And that article that Dr. Kinsborn relied on, moreover did not have focal brain damage, is the ultimate injury. And under Daubert, I think that the special master correctly looked at Dr. Kinsborn's theory under the criteria of Daubert and found that although he didn't require scientific certainty, he did require and was entitled to find some addition of reliability to support the assertions of Dr. Kinsborn. And in this regard, Dr. Kinsborn's only support was that Matthew was healthy prior to the vaccination and according to his parents developing normally. We don't have medical records, but I think the special master accepted his speech was normal prior to. The vaccination and that subsequently he developed these speech delays. And he correctly concluded that this temporal association alone was not sufficient under much of the federal circuit law, including Moberly, to satisfy petitioner's burden of proof. Can I just ask this, is there anything here that's not quite the same as the normal, our caution about temporal relation between, it seems to me that our normal caution is temporal relation between vaccine and problem is not by itself enough. But here there's no disagreement that there was vaccine, some kind of anaphylactic reaction and then problem. And it seems to me the question here, therefore, is temporal relation between vaccine and problem, but anaphylactic reaction and problem sufficient, which is not quite what we've addressed and found insufficient in our prior cases. I agree with you, but I do think in this particular case, Dr. Kinsporn, we had the anaphylactic and a focal brain injury in the subsequent speech delays. And it was Dr. Kinsporn who asserted the mechanisms by which this could occur. Special master didn't require Dr. Kinsporn to posit these mechanisms. Dr. Kinsporn's theory was that anaphylactic reactions can sometimes progress into a phase, so you could have the two-phase anaphylactic reaction, in which widespread inflammation and anoxia cause organ damage. And in this case, he said the organ that was injured was the brain. So once Dr. Kinsporn offered these mechanisms to show that anaphylactic can cause focal brain damage, the special master was required to assess the reliability of the proposed mechanisms. And that's exactly what he did. So he went from the novel theory of causation that no one had ever seen before, that you couldn't find any reliable support for it, basically the Ipsy Dixit of Dr. Kinsporn. And he said, well, even if we find that theory reliable, let's see if the mechanisms posited by Dr. Kinsporn are in play in this case. But it was Dr. Kinsporn's theory that it was either inflammation or anoxia, or a combination of the two, that weren't severe enough to cause death, but could cause focal brain injury. And to go back to poem one, even Judge Sweeney agreed that the special master's conclusions that Dr. Kinsporn's theory was nothing more than a hypothesis of causation without reliable scientific or medical explanation. And she found that the special master did not require Petitioner to provide conclusive evidence from the medical literature of proof of a biological mechanism, but he quite properly required Petitioner to carry her burden, to bring forward a reliable medical or scientific explanation. And she found that the special master committed no error. Let me just try to be clear about this. It seems to me it's one thing to say, at a minimum you have to have some reliable scientific medical explanation of the connection, which could be epidemiological evidence without any guess about mechanism. And it's another thing to say you actually have to have reliable medical basis for a particular mechanism at work. Which is the problem here? I think it would be the latter. There is no evidence that anaphylactic reaction can cause the type of damage posited by Dr. Kinsporn. You don't have the epidemiological evidence. You don't have it accepted in the medical community that anaphylactic reaction can cause focal brain damage. You don't have... The mechanisms you have were the ones posited by Dr. Kinsporn. So I'm not sure if I'm answering your question, but you don't have certainty. So in this case those two questions I think you're suggesting collapse into the same because the various non-mechanism ways of having a reliable medical basis for a causation conclusion don't exist, like epidemiological ones. So the only possible one that could be supported is some notion of understanding of the internal brain mechanism, and that's not supported either. That is correct. I think that Dr. Kinsporn's theory... And you have to go back because it's also a two-phase. You have an anaphylaxis that didn't occur on table that had a two-phase. For Dr. Kinsporn's theory of causation you had this two-stage anaphylaxis, which isn't found anywhere in the medical literature in the same sequence that happened. You don't have the focal brain damage. The special master correctly found under prong one that Dr. Kinsporn's theory of causation was not reliable. And he didn't require biological mechanisms to show that. He just said the theory was not based... Nothing more than hypothesis and conjecture wasn't based in reliable medical explanation or science. So when you say hypothesis, is the government's position that the causation, the relationship between the vaccine and the effect, must be shown beyond any reasonable doubt or by a preponderance of the entirety of the evidence, or more likely than not, or what? It is a preponderance of evidence. So the theory of causation has to be based on some sort of indicia of reliability. That takes us back to the question of what alternative theory was offered for the clear injury. Not only the reaction, we've given it a name, whether that is in fact fully descriptive of what happened, the extraordinarily rapid increase in temperature and so on. So we call it anaphylactic and all of a sudden it gets categorized into something or other. But what else? What was there as a possible explanation of what happened? I don't believe that there was another alternative cause to relate Matthew's subsequent speech to us, but it was not respondents' burden to show an alternate cause because petitioner had not met their burden of showing a vaccine, a logical theory, and then a logical sequence of causes. I've seen them out of time, but basically, in summary, this case is similar to Moberly's. The special master correctly found that the petitioner had not posited a reliable medical theory showing that the vaccine can cause... Nobody knows why that happens. That's why we have this statute. If we knew the mechanisms and why vaccines cause this or that and which infants are susceptible and which aren't, then we wouldn't have the recognized standard percentage of injury. But here, and I will correct myself, it's not that the vaccine is it. There was no reliable theory connecting the anaphylactic reaction to the subsequent focal brain injury. And even then, when Dr. Kinsmore posited his theories, his mechanisms, the special master correctly looked at those mechanisms, as in Moberly, to see if they were in play in this case. And by Dr. Kinsmore's own testimony, there was no evidence of anoxia. There was no clinical signs of anoxia. There was no anoxia on examination. There was no signs of inflammation on examination. In the subsequent event that happened on the 17th, there was no fever. Dr. Kinsmore's mechanisms at work were not at work in this case, and that's why the special master properly found, even if you accept those mechanisms under Moberly, they were not at play in this case. So the only thing that was left for Dr. Kinsmore's theory to carry was merely a temporal association between the vaccination and the output of Matthew's speech delay. Any more questions? Okay, thank you, Ms. Renzi. We have some rebuttal time. Is there anything else you need to tell us? Thank you very much. The situation here was that Dr. Kinsmore did have an incomplete understanding of how the anaphylactic reaction caused the brain injury, which caused the loss of expressive speech skills. But this program exists both in its table and its cause and effect side to allow petitioners, to allow people who may have been injured by vaccines, to prove the vaccine caused their injury in an atmosphere, in an environment in which there is an incomplete understanding of how vaccines cause injuries. So if the special master requires a complete understanding, an understanding of the mechanism or an understanding of, or an epidemiological study, for example, that is requiring more petitioners than they can be reasonably expected to provide, and more importantly, in the context of this case, more than this court has required them to provide in the Knudsen and the Alton and the Capozano cases, the law should have been allowed to prove their case with indirect evidence. And that indirect evidence, in this case, was an acute vaccine reaction that had the propensity to damage the brain, followed by a symptom of brain injury. The degree of specificity that the special master required was inappropriate. Focal injuries of anaphylactics were very uncommon. An injury at all from anaphylaxis that isn't death is uncommon. But they happened. And there was substantial evidence, and there was sufficient evidence both for a medical theory that the vaccine caused this boy's injury, and there was a logical sequence of cause and effect. And everyone conceded that there was an appropriate temporal relationship. So the petitioners, the law, satisfied the Alton criteria. They were unable to persuade the special master because the special master required more. He required a complete understanding of the injury. He required mechanism evidence. And mechanism is not the only way to provide a link between a vaccination and injury. And specifically in this case, a conceded, acknowledged, vaccine-caused anaphylactic reaction and injury. Thank you. Okay. Thank you, Mr. Webb and Ms. Renzi. The case is taken under submission.